UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

AIRBORN OPERATING,

    Plaintiff,

    v.

ERIK-A ELECTRONICS, ET AL.,

    Defendants.
_____/

No. C 04-4996    JL

**DISMISSAL**

**Factual and Procedural Background**

    Airborn Operating, LLP, is a Texas limited partnership with its principal place of business in Texas. It manufactures electronic internet connection devices. Defendants Marvin Wilcher and Sharisse Lanaux are owners and officers of Erik-A Electronics, dba Taylor Electronics,[1] California corporations whose shares are owned by Premier Capital Investors, Inc. The amount in controversy in this lawsuit is more than $75,000, so this Court has jurisdiction under 28 U.S.C. §1332. All parties consented to the jurisdiction of this Court as provided by 28 U.S.C. §636(c) and Civil Local Rule 73.

---

[1] The Court included this characterization of the relationship of Wilcher and Lanaux with Erik-A and Taylor in its Order Vacating Default issued April 29, 2005. Defendants did not object to this characterization.

Defendants have allegedly not paid Airborn on invoices totaling $93,780.64 for devices sold and delivered between July 30 and October 18, 2004.

Airborn filed suit on November 24, 2004 and served Defendants, demanding a jury trial. Airborn Accounting Manager Craig Bray soon after received a call from Marvin Wilcher, confirming that he and Sharisse Lanaux had both been served with the summons and complaint. He stated that Taylor Electronics was headed for bankruptcy and offered an "unacceptable nominal sum" in settlement under threat of filing bankruptcy in a matter of weeks. Wilcher also said his attorney was preparing an answer. Bray of Airborn told him to communicate with Airborn's attorney, Brett Pedersen, and that Airborn would be proceeding with legal action.

Defaults were entered against Defendants Wilcher, Lanaux, Erik-A and Taylor Electronics on February 3, 2005. Wilcher and Lanaux filed answers the same day. Erik-A and Taylor Electronics did not file an answer. The Court on April 29, 2005 granted Wilcher and Lanaux's motion to set aside the defaults but let it stand against Erik-A and Taylor. These entities have never appeared in this action.

Airborn moved to amend its complaint to add Defendants Premier Capital Investors, Premier Financial Associates, Ambassador Electronics, LLC, Summit Financial Resources, L.P., and Charisse Lanaux. Default was later entered and then vacated against Charisse Lanaux, which is most likely a variant spelling of the name of Sharisse Lanaux.

Wilcher and Lanaux filed a notice of non-opposition to Airborn's motion for leave to amend but at that time contended that:

> "Defendants Marvin Wilcher and Sharisse Lanaux notify the court of their non-opposition to the Plaintiff's motion to amend the complaint. In doing so, however, the defendants wish to note to the court that the parties being added to this complaint have had nothing to do with this matter whatsoever. This amendment will result in further delaying this case as each of these new defendants will no doubt be filing motions to dismiss or for summary judgment due to their lack of involvement with the facts surrounding this case. Unfortunately, however, the fact that a party will later be dismissed does not appear to be an issue to be considered in a motion to amend under FRCP 15(a)."

The Court granted leave to amend to add these defendants on August 2, 2005.

1    The amended complaint was filed August 31. It named Wilcher, Lanaux, Erik-A,
2 Taylor, PFA, PCI and Summit Financial. Wilcher, Lanaux, PCI and PFA filed an answer.
3 Summit Financial filed an answer and cross-claim against PCI, Erik-A, Wilcher and Lanaux.
4 Summit Financial is represented by different counsel from Airborn.

5    Summit Financial claims to have provided financing to Erik-A and in its answer
6 contends at page 10, lines 11-14:

> On or about September 9, 2003, Wilcher, Lanaux and Premier Capital entered into separate Continuing Guaranty agreements with Summit guaranteeing all advances, debts, obligations and liabilities of Erik-A emanating or resulting from the Factoring Agreement.

10    This claim seems to indicate that Wilcher, Lanaux and PCI were assuming
11 responsibility for contracts entered into by Erik-A, a relationship which supports Plaintiff
12 Airborn's contention that Wilcher and Lanaux represented to Airborn that they were
13 responsible for the debt incurred by Erik-A when it sought credit for its purchase of
14 Airborn's products.

15    Then at page 11, lines 15-20 of its answer and cross-claim, Summit avers:

> 12. Defendants Wilcher, Lanaux and Premier Capital guaranteed Erik-A's obligations emanating or resulting from the Factoring Agreement. Accordingly, Wilcher, Lanaux and Premier Capital are each contractually obligated to indemnify Summit for any and all claims, liabilities or damages which might be awarded or incurred by Summit as a result of Airborn's Complaint, including all legal costs and attorney's fees incurred by Summit in defending against the Complaint.

21    This also tends to support the reasonableness of Airborn's contention that Wilcher
22 and Lanaux are alter egos of Erik-A and Taylor Electronics.

23    On September 7, 2006, Airborn and Defendants Wilcher, Lanaux, PCI and PFA
24 stipulated with Summit Financial that the claims against it be dismissed without prejudice
25 pursuant to FRCP 41(a)(1), all parties to pay their own attorney's fees and costs.

26    Throughout the pendency of the case the parties had been theoretically pursuing
27 non-binding arbitration, but the meeting with the arbitrator was repeatedly continued. In
28 October 2006 the latest arbitration hearing was cancelled.

Airborn's counsel had discovered that Defendant Marvin Wilcher is currently subject to an unenforceable jury verdict of approximately one million dollars for his involvement in conduct similar to that alleged in this action. When this information was confirmed by Defendant's counsel, Airborn concluded that any further action against Mr. Wilcher and his alleged cohorts would be a waste of the parties' and the court's resources. Defense counsel had also recently requested that Airborn release Defendants Sharisse Lanaux and Premier Financial Associates in the interests of justice.

Accordingly, Airborn moved to dismiss the entire action without prejudice, as provided by Rule 41(a)(2), with all parties to bear their own attorney's fees.

**Legal Argument**

Defendants Marvin Wilcher, Sharisse Lanaux, Premier Capital Investors ("PCI") and Premier Financial Associates ("PFA") oppose Airborn's motion to dismiss and in particular the provision that all parties bear their own fees and costs. The basis for their opposition is that they have incurred nearly $20,000 in attorney's fees and that Airborn wrongfully named Defendants Wilcher, Lanaux, PCI and PFA as alter egos of the defunct corporation Erik-A dba Taylor Electronics, without conducting an adequate investigation.

Defendants claim that when the motion to dismiss was filed they were preparing a motion for summary judgment and that if this Court grants the motion to dismiss under Airborn's terms that Defendants will be barred from obtaining a judgment in their favor and thereby barred from recovering their fees and costs. Furthermore, Defendants claim there is no evidence that Defendants other than Wilcher are also judgment proof, so Airborn should proceed to trial against them and be defeated.

Airborn proffers Wilcher's own verified discovery responses to establish that he is the "Chief Financial Advisor" for PFA and that he has received no compensation from PFA in that role from January 1, 2004 through July 2006 and owns no stock in PFA. Defendant Lanaux claims to be the CEO of PFA during the same time that Wilcher provided Financial Advising services for free. Wilcher is the majority shareholder of PCI and has been its Chief Operating Officer and Director from January 2003 to the time of his responses in October

2006. (Wilcher Responses to Special Interrogatories, # 21, 25, 27; Lanaux Responses: 18, 23, 25).

Wilcher himself identified PCI as the successor to Erik-A and Taylor in his own Declarations submitted to this Court with the motion to set aside default. In his Declaration (Document # 40) Wilcher for the first time identified PCI as having purchased all outstanding shares of the company to which AirBorn had shipped $93,000.00 worth of untraceable merchandise. Wilcher attempted to shift responsibility for the merchandise to PCI and in so doing left AirBorn with no choice but to include PCI in the lawsuit it filed to recover the loss it incurred when it shipped goods to Wilcher on his own credit representations. Wilcher's own Declaration was the first notice to AirBorn that PCI claimed to be the owner of Eric-A -Taylor Electronics company after it had received $93,000.00 worth of AirBorn's merchandise and bounced a $32,000.00 check.

On November 24, 2004 Airborn filed its complaint for Damages against Erik-A Electronics, Taylor Electronics, Wilcher and Lanaux. At that time Airborn knew nothing of PCI or PFA, since no mention had ever been made of those entities while Wilcher and Lanaux did business with the individual defendants.

In timely, verified discovery responses to Defendants' interrogatories, AirBorn stated that all of its business dealings were with Wilcher and Lanaux. Wilcher and Lanaux claimed to be doing business through Erik-A and Taylor. Airborn's verified response to Defendants' interrogatory # 56 states as follows:

> "In or around December 2003, Defendants Sharisse Lanaux and Marvin Wilcher made representations to Plaintiff's finance personnel concerning the purchase of Taylor Electronic shares by Erik-A Electronics. At no time during its commerce with Plaintiff did any Defendant mention to Plaintiff's finance personnel that any other person or entity was involved in the purchase or acquisition of Taylor Electronics. Lanaux and Wilcher, and each of them at various times and places, caused Plaintiff to understand that they, themselves, had acquired the company and joined it as Erik-A and Taylor Electronics under Defendants' sole ownership and operation. Plaintiff is informed and believes and thereon contends that at no time did Lanaux or Wilcher disclose to Plaintiff's finance personnel, that Defendants were acting on behalf of, as agents of, or as employees of third-parties PFA or PCI during the transactions that give rise to this lawsuit. The first time that Plaintiff learned that it was doing business with PFA or PCI was, on information and belief, when Plaintiff saw Defendant Lanaux's Declaration in Support of Motion to Set Aside Default in this action. In or around December, 2003, Plaintiff received a Net

1  Worth statement from Marvin Wilcher and Sharisse Lanaux that they furnished to Plaintiff for the purpose of substantiating credit. This Net Worth Statement provided to Plaintiff by Wilcher and by Lanaux contained no reference to PCI or PFA. Plaintiff's investigation and discovery are continuing. Plaintiff reserves the right to supplement and amend this Response as information becomes known to it.

4  ( Airborn Operating, L.P.'S Responses to Special Interrogatories, at pages 28-29).

## Analysis and Conclusion

Rule 41(a)(2), Federal Rules of Civil Procedure provides for dismissal without prejudice of a civil action by the court "upon such terms and conditions as the court deems proper." An action may not be dismissed against a defendant's objection if a counterclaim has been filed prior to the filing of the motion to dismiss. Defendants filed no counterclaim in this case.

Defendants do not deny that a motion to dismiss should be granted unless a defendant can show that it will suffer some plain legal prejudice as a result of the dismissal. *Smith v. Lenches*, 263 F.3d 972, 975 (9th Cir. 2001). Legal prejudice is "prejudice to some legal interest, some legal claim, some legal argument." *Id.* at 976.

In the instant case, Defendants argue they are being legally prejudiced by the motion. Airborn is not seeking to dismiss with prejudice. It wants to dismiss with the possibility of returning some day. Yet, a dismissal means that Defendants may never get an opportunity to succeed on the merits which would allow for attorneys fees, *Reynolds Metals Co. v. Alperson* (1979) 25 Cal 3d 124, or to file a malicious prosecution action to recover costs and damages. If Airborn never refiles the litigation the Defendants never get the opportunity to recover fees or to sue for damages. Defendants argue that this is a loss of a legal right, prejudicial to them.

Airborn responds that the true injustice is to Airborn because Defendants have been unjustly enriched to the tune of $ 93,000.00 for Airborn's products and will come out ahead even after they pay their attorney fees. It also argues it has ample evidence of the connections between Defendants and of Defendants with Erik-A and Taylor Electronics. In fact, argues Airborn, Wilcher and Lanaux have themselves established their connections to

Premier Capital Investors (PCI) and Premier Financial Advisors (PFA) and their status as successors to Erik-A and Taylor Electronics.

As the facts contained in a verified discovery response plainly show, Mr. Wilcher and Ms. Lanaux held themselves out to AirBorn as the sole owners of Erik-A, dbaTaylor Electronics when they wanted AirBorn to extend credit on an existing purchase order account. Further, when representing their own credit-worthiness, the individual defendants omitted any mention of Mr. Wilcher's one million dollar judgment liability in the net worth statements they provided to AirBorn.

This conclusion is supported by similar contentions in the answer and cross-claim by Summit Financial that Wilcher, Lanaux and PCI assumed responsibility for obligations of Erik-A under the Factoring Agreement with Summit.

Plaintiff AirBorn was certainly justified in amending its complaint to include PCI when Mr. Wilcher's Declaration (Document 40) asserted that PCI was the sole owner of Erik-A's shares and claimed that all corporate formalities had been followed, while this previously unknown entity (PCI) presumably received the benefit of $93,000.00 worth of sellable, untraceable merchandise. This does not suggest a "shotgun approach" to litigation as alleged by Defendant's; it is a reasonable response when the only debtor AirBorn ever knew about suddenly introduces new "responsible parties."

In addition, Summit Financial, an entity unconnected with Airborn, independently asserts that Wilcher and Lanaux guaranteed as to Summit any debt incurred by Erik-A and Taylor Electronics. This also tends to support the reasonableness of AirBorn's contention that Wilcher and Lanaux are alter egos of Erik-A and Taylor Electronics, and that they represented to Airborn that they would be individually responsible for any debt incurred by Erik-A and Taylor Electronics for purchasing AirBorn's products.

The Court agrees with Airborn that it has acted reasonably in this case from the start. Attempting to obtain payment for its lost merchandise, adding new defendants as they were identified by existing defendants, and then promptly deciding to terminate the action when it became clear that a useful outcome was unlikely - - are all legitimate decisions

1 made in good faith and sound legal judgment. Airborn is entitled to conclude this matter
2 and Defendants will suffer no legal prejudice by the Court granting this motion.
3    Accordingly the motion to dismiss this action without prejudice pursuant to Rule
4 41(a)(2), Federal Rules of Civil Procedure, is hereby granted. Parties to bear their own fees
5 and costs.
6    IT IS SO ORDERED.
7 DATED: February     2007

James Larson
Chief Magistrate Judge

G:\JLALL\CHAMBERS\CASES\CIVIL\04-4996\ord-grant-114.wpd